2025 IL App (1st) 231550-U

No. 1-23-1550

Order filed February 14, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. YK00070331 |
| | ) | |
| CHRISTIANA GONZALEZ, | ) | Honorable |
| | ) | Stanley L. Hill, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant Christiana Gonzalez's conviction for leaving the scene of an accident is reversed where the State's evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Defendant's other convictions are affirmed where the State's evidence was sufficient, and the cause is remanded for the limited purpose of correcting a scrivener's error.

¶ 2    Defendant Christiana Gonzalez appeals her convictions for driving while under the influence of alcohol, leaving the scene of an accident, improper lane usage, transporting alcohol, driving without a valid driver's license, and stopping, standing or parking outside of a business or residence district. Defendant was sentenced to 18 months' supervision and $1,050 in fines. The issues presented are: (1) whether the State proved defendant guilty of her offenses beyond a

reasonable doubt, and (2) whether the circuit court abused its discretion in failing to grant a 100% waiver of defendant's fines. For the following reasons, we reverse defendant's conviction for leaving the scene of an accident, affirm her other convictions, and remand for the limited purpose of correcting a scrivener's error.

¶ 3                                    I. BACKGROUND

¶ 4     On the evening of October 29, 2021, Officer Brenka of the Berwyn Police Department responded to a call about a hit and run vehicle collision near 2715 Highland Avenue in Berwyn, Illinois. When he arrived, he saw a parked silver Hyundai that had been struck on the rear passenger side. Officer Brenka then saw on his computer that a "slumper" had been reported a couple blocks away, near the intersection of West 28th Street and Ridgeland Avenue. Believing that it could be related to the hit and run, Officer Brenka drove to the scene.

¶ 5     Upon arriving, Officer Brenka observed a black Mercedes SUV facing westbound on 28th Street with a woman, defendant Christiana Gonzalez, asleep in the driver's seat with the car in reverse and her foot on the brake. Other officers and an ambulance had arrived at the scene before Officer Brenka. One of the other officers opened the front passenger door, which was unlocked, and turned off the vehicle. According to Officer Brenka, defendant's breath smelled strongly of alcohol, her eyes were bloodshot, and the rear of her pants and the driver's seat were wet. Defendant's demeanor was "pretty relaxed," and she asked about the location of her car keys before being taken to the hospital. The front driver's side of the vehicle was damaged and had a silver paint transfer that Officer Brenka believed was "consistent with the parked Hyundai that was struck down the road."

¶ 6    Officer Brenka searched defendant's vehicle and found an insurance card and a state identification card but no driver's license. After running defendant's name through the Law Enforcement Agencies Data System, Officer Brenka determined that she did not possess a valid Illinois driver's license. The interior compartment of the vehicle contained an open can of Monaco alcohol and an open bottle of Tito's vodka.

¶ 7    At the hospital emergency room, defendant told Officer Brenka that she had a heart condition, that she had been on her way home from an Alcoholics Anonymous meeting, and had been "drinking, but not the hard stuff." Officer Brenka could not perform a standard field sobriety test because defendant was in a hospital bed but asked her to perform two verbal sobriety tests: reciting the alphabet and counting backwards. According to Officer Brenka, defendant's speech was "very slurred," and she was unable to successfully complete the tests.

¶ 8    Defendant agreed to allow the hospital staff to collect blood and urine samples from her. The samples were properly sealed, and Brenka signed the samples and inventoried them as evidence back at the police department building.

¶ 9    Defendant was charged with one count of driving while under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2020)), leaving the scene of an accident (625 ILCS 5/11-402(a) (West 2020)), improper lane usage (625 ILCS 5/11-709(a) (West 2020)), transporting alcohol (625 ILCS 5/11-502(a) (West 2020)), driving without a valid driver's license (625 ILCS 5/6-101 (West 2020)), and stopping, standing or parking outside of a business or residence district (625 ILCS 5/11-1301 (West 2020)).

¶ 10    At trial, Officer Brenka testified to the events of October 29, 2021, as recounted above. He also testified that he was trained in driving under the influence detection and investigation, and

crash investigation and reconstruction. Additionally, he testified that, based on the results from the blood and urine samples and that there was open alcohol in the car, defendant's breath smelled strongly of alcohol, she appeared to have urinated on herself, and she failed the sobriety tests, it was his belief that defendant was under the influence of alcohol that evening.

¶ 11    Officer Brenka's dashboard camera footage from that evening was also admitted into evidence. Defendant and her SUV are outside the view of the camera. However, Officer Brenka can be heard asking defendant why she was passed out in the middle of the street, with defendant responding by asking for her car keys. Later in the video, after searching the SUV, Officer Brenka walks to the front of his vehicle and shows an open Monaco can and a bottle of Tito's vodka to the camera.

¶ 12    Katie Craft, an employee of the Illinois State Police Forensic Science Command, testified that she analyzed defendant's blood samples and found that they contained ethanol at a level of 0.352 grams per deciliter. The State sought to admit Craft's lab report into evidence, but the circuit court ruled the report inadmissible hearsay.

¶ 13    Defendant testified that she has heart arrhythmia that she takes medication for and that her condition is affected by stress and sometimes causes her to urinate on herself or go into cardiac arrest. Defendant testified that at 7:00 p.m. on October 29, 2021, she purchased supplies at Home Depot. As she was putting her purchases into her SUV, she hit the parked vehicle next to her with her SUV's door. She exchanged contact information with the owner of the vehicle and then hit his vehicle with her door again, which caused the man to become "very irate." Defendant left the parking lot and started to drive home. She was upset by the encounter, so she pulled over and called a family member. They spoke for around 20 minutes, during which time her vehicle was

turned off and in park. Police officers arrived and asked her to get out of her car, saying that she had committed a hit and run. She was then escorted into an ambulance and taken to the hospital.

¶ 14   Defendant denied telling Officer Brenka that she had been driving home from an Alcoholics Anonymous meeting. However, she testified that she told him that she drank one can of Monaco at noon that day in her house while having lunch with the construction workers renovating her kitchen, and that the empty Monaco can found by Officer Brenka in her vehicle was not hers. She denied knowing that there was a bottle of Tito's vodka in her car and claimed that her vehicle was also used by her two adult children and the construction workers.

¶ 15   The circuit court found defendant guilty of all counts and sentenced her to 18 months of supervision and $2,100 in fines. After hearing defendant's sworn testimony that she receives state assistance in the form of food stamps and a Link card, the circuit court granted a 50% waiver due to undue hardship and reduced the fines to $1,050. Defendant filed a motion to reconsider the finding of guilt in which she argued that the State failed to prove defendant guilty of driving while under the influence of alcohol beyond a reasonable doubt and that the circuit court erred in admitting testimony as to the results of the blood sample analysis because the State failed to establish proper foundation.

¶ 16   On March 22, the circuit court reviewed the motion to reconsider and questioned how despite defendant's blood alcohol concentration being 0.352, she was able to have conversations with Officer Brenka because "unless she's got a heck of a tolerance – maybe there's something wrong with that picture." The circuit court *sua sponte* reopened the case in order to answer its questions regarding the blood testing:

"But, look, this is what I want to know: Was it blood plasma that was checked, or was it full blood? If it was full blood, the reading would probably be correct. If it's blood plasma, that could result in a higher BAC reading than otherwise.

\*\*\*

When they do the kit, which is what this was, a DUI kit, they're supposed to do it based on full blood. I want to make sure. Was it full blood, or was it plasma? And perhaps you need to bring that nurse in, because this is on a motion to reconsider.

On a motion to reconsider, I can listen to what that nurse has got to say about whether or not \*\*\* there were any irregularities in the way she conducted the draw and was it plasma or was it full blood."

¶ 17 At the hearing on defendant's motion to reconsider, the State informed the circuit court that it was still working on contacting the nurse who took defendant's blood draw. The circuit court revisited its trial decision and allowed Craft's lab report to be admitted into evidence. The assistant state's attorney told the circuit court that the 0.352 result was from whole blood, and therefore no conversion was necessary to calculate defendant's blood alcohol concentration. The circuit court responded that "I was thinking that was the case, but I wanted to be sure." The circuit court denied defendant's motion for reconsideration.

¶ 18 Defendant filed a notice of appeal but the following day the circuit court purportedly "withdrew its authorization" of the notice of appeal and reopened the case to hear further testimony from the nurse and Craft regarding Craft's lab report:

"I have concluded in light of the fact I allowed [Craft's lab report] into evidence only on yesterday[,] [n]either the State, Defense, nor the Court have been allowed an

opportunity to obtain testimony from the nurse who drew defendant's blood or the forensic examiner regarding [the lab report]. Thus, a significant and meritorious enough issue exist[s] that requires the State to obtain the nurse and forensic examiner to permit further questioning regarding these exhibits prior to appeal."

¶ 19    At the hearing, Craft testified that defendant's whole blood was tested and therefore no conversion was needed. Additionally, Craft testified that even if defendant's blood had been plasma, the 0.352 grams per deciliter result still, upon conversion, would have been over the 0.08 blood alcohol concentration limit. The nurse was not present at the hearing. The circuit court once again denied defendant's motion for reconsideration. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 20                                        II. ANALYSIS

¶ 21                              A. Sufficiency of the Evidence

¶ 22    Defendant argues that the State failed to prove beyond a reasonable doubt that she was guilty of driving while under the influence of alcohol, leaving the scene of an accident, improper lane usage, transporting alcohol, driving without a valid driver's license, and stopping, standing or parking outside of a business or residence district. "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). Instead, "[a] criminal conviction will be reversed only if the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt." *People v. Morris*, 2014 IL App (1st) 130512, ¶ 16. Thus, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, 162 N.E.3d 223, ¶ 64.

¶ 23    The State concedes that defendant could not have been found guilty of leaving the scene of an accident where there was no testimony that the silver Hyundai was "driven or attended by any person." 625 ILCS 5/11-402(a). Therefore, we reverse defendant's conviction for this offense.

¶ 24                    1. Driving While Under the Influence of Alcohol

¶ 25    Defendant argues that the State's evidence was insufficient to prove beyond a reasonable doubt that she was guilty of driving while under the influence of alcohol. Defendant was charged and found guilty of violating section 11-501(a)(2) of the Illinois Vehicle Code, which states that a person "shall not drive or be in actual physical control of any vehicle" while "under the influence of alcohol." 625 ILCS 5/11-501(a)(2). "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, [her] mental or physical faculties are so impaired as to reduce [her] ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000). Circumstantial evidence alone is sufficient to prove that a defendant was under the influence of alcohol, and "[w]here the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary." *Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 26    Here, the State's evidence that defendant was in actual physical control of her vehicle and under the influence of alcohol was overwhelming. The trier of fact found that Officer Brenka's testimony was "very credible" while defendant's testimony "was not." Officer Brenka testified that he found defendant asleep in the driver's seat with her vehicle in reverse and her foot on the brake. Another officer opened the front passenger door and turned off the car. Defendant's breath smelled strongly of alcohol, her eyes were bloodshot, and she appeared to have urinated on herself.

Officer Brenka searched defendant's vehicle and found two open containers of alcohol, which he showed to his dashboard camera. He testified that later, at the hospital, defendant told him that she had been on her way home from an Alcoholics Anonymous meeting and that she had been "drinking, but not the hard stuff." Defendant's speech was "very slurred." This testimony provides more than sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant was in actual physical control of her vehicle and was under the influence of alcohol. See *Morris*, 2014 IL App (1st) 130512, ¶ 18 (holding that the defendant was in actual physical control of the vehicle even though he was sleeping in the driver's seat); *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003) (holding that an officer's testimony that the defendant's breath smelled of alcohol, his eyes were bloodshot, and his speech was slurred was "relevant evidence of physical and mental impairment").

¶ 27    Defendant argues that her driving while under the influence of alcohol conviction should be reversed because the circuit court's comments and decision to reopen the case to hear new evidence indicated that the circuit court had reasonable doubt as to defendant's guilt. *In re Vuk R.*, 2013 IL App (1st) 132506, ¶¶ 6-8 (reversing the defendant's conviction where the trial court's comments indicated that it had reasonable doubt as to the defendant's guilt); *People v. Warren*, 40 Ill. App. 3d 1008, 1011 (1976) (same). Specifically, defendant points to the circuit court's decision to reopen the case so that Craft could testify as to whether the 0.352 blood alcohol concentration result came from testing defendant's whole blood or blood plasma, and so the nurse could testify as to whether the blood draw was conducted properly.

¶ 28    The circuit court's supposed "withdrawal of its authorization" of defendant's notice of appeal to hear Craft's additional testimony was procedurally improper. "A notice of appeal is a

procedural device filed with the trial court that, when timely filed, vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed, or modified." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). After the notice of appeal is filed, the "appellate court's jurisdiction attaches *instanter*, and the cause of action is beyond the jurisdiction of the circuit court," except for "matters collateral or incidental to the judgment." *Id.* at 173-74. Therefore, after the circuit court denied defendant's motion to reconsider and defendant filed its notice of appeal, the circuit court lost jurisdiction over the case.

¶ 29    Regardless, both the circuit court and the parties appear to have been under the mistaken impression that defendant's blood alcohol concentration was a necessary element of the crime of which she was convicted. Defendant's sentencing order lists her as having been found guilty of a different subsection of the Code, which states that a person "shall not drive or be in actual physical control of any vehicle" while "the alcohol concentration in the person's blood *** is 0.08 or more." 625 ILCS 5/11-501(a)(1). The parties agree that this was a scrivener's error. This mix-up persisted throughout the rest of the proceedings. In defendant's motion to reconsider, she argued that the State "failed to prove every material allegation beyond a reasonable doubt" because it failed to prove that defendant was in actual physical control of the vehicle and that her blood alcohol concentration was above 0.08. Even in defendant's notice of appeal, she is listed as having been found guilty under this incorrect subsection of the Code.

¶ 30    Defendant was found guilty of being in actual physical control of a vehicle while under the influence of alcohol. See *id.* § 11-501(a)(2). Without even considering the blood evidence, there is overwhelming evidence to support a finding of guilt under subsection (a)(2). Any questions the circuit court may have had about the blood evidence are immaterial. *People v. Diaz*, 377 Ill. App.

3d 339, 344-45 (2007) ("The State need not present chemical evidence of intoxication in the form of a \*\*\* blood test to obtain a conviction; rather, the credible testimony of the arresting officer may be sufficient to prove the offense.").

¶ 31                                    2. Improper Lane Usage

¶ 32    Defendant argues that the State did not prove beyond a reasonable doubt that defendant was guilty of improper lane usage because it never identified where and when defendant unsafely left her lane and did not present any witnesses who saw defendant driving her SUV or surveillance video showing defendant's improper lane usage. See *People v. Carter*, 2021 IL 125954, ¶ 42 ("A reviewing court's obligation to view the evidence in the light most favorable to the prosecution does not mean that the reviewing court construes the record to contain evidence that the State failed to produce."). "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a).

¶ 33    Officer Brenka testified that he responded to a call about a hit and run vehicle collision, and that when he arrived, he saw a parked silver Hyundai that had been struck on the rear passenger side. He then noticed that a "slumper" had been reported nearby and went to investigate because he thought that it could be related to the hit and run. When he arrived, he saw that defendant's SUV had damage on the front driver's side of the vehicle with a silver paint transfer. Officer Brenka testified that he was trained in crash reconstruction and believed that the damage on defendant's vehicle was consistent with a collision with the silver Hyundai parked a couple blocks away. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant moved outside her lane and struck the

Hyundai parked at the side of the road. *People v. Slinkard*, 362 Ill. App. 3d 855, 857 (2005), *as modified on denial of reh'g* (Jan. 24, 2006) ("A criminal conviction may be based on circumstantial evidence, as long as it satisfies proof beyond a reasonable doubt of the charged offense.").

¶ 34                                    3. Transporting Alcohol

¶ 35    Defendant argues that the State did not prove beyond a reasonable doubt that defendant was guilty of transporting alcohol because the State failed to establish that the alcohol was found in the passenger area of defendant's vehicle. "[N]o driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." 625 ILCS 5/11-502(a).

¶ 36    Officer Brenka testified that he located the open can of Monaco alcohol and open bottle of Tito's vodka in "the interior compartment" of defendant's vehicle. Additionally, in the dashboard camera footage shown at trial, Officer Brenka can be heard repeatedly pulling on a handle inside the SUV. He then tells someone that "I can't get this compartment open up under here." Around 20 seconds later, he can be heard saying "uh oh." Several seconds later he appears in view of the camera in front of his vehicle holding the containers of alcohol. This evidence was sufficient to establish that Officer Brenka found the alcohol in an interior compartment in the passenger area of defendant's vehicle. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) ("[T]he reviewing court must allow all reasonable inferences from the record in favor of the prosecution."); *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 37 (holding that glove compartment was part of the passenger area of a vehicle).

¶ 37                    4. Driving Without a Valid Driver's License

¶ 38    Defendant argues that the State did not prove beyond a reasonable doubt that defendant drove without a valid driver's license. "No person *** shall drive any motor vehicle upon a highway in this State unless such person has a valid license or permit ***." 625 ILCS 5/6-101(a).

¶ 39    Officer Brenka testified at trial that defendant "could not produce a [driver's] license" when he asked her to, and that he was unable to locate a driver's license in her car. Additionally, he testified that he ran her name through the Law Enforcement Agencies Data System and "learned that she did not possess a valid Illinois driver's license." Defendant points out that she was arrested in November 2021 and that during this time the Illinois Secretary of State's Office had extended the expiration dates of driver's licenses until December 1, 2022, due to the Covid-19 pandemic. She argues that the State offered no evidence that her license was not included within this extended pandemic grace period. However, if defendant's license's expiration had been prevented by the pandemic grace period, then it would have appeared as a valid driver's license when Officer Brenka checked the data system.

¶ 40    5. Stopping, Standing or Parking Outside of a Business or Residence District

¶ 41    Defendant argues that the State failed to provide any evidence regarding where defendant's vehicle was located on the street.

> "Outside a business or residence district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free

passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway." 625 ILCS 5/11-1301(a).

¶ 42    The evidence showed that defendant's vehicle was stopped in the middle of the street. Officer Brenka testified that when he arrived at the scene, he observed that defendant's vehicle was "stopped in the roadway." Defendant was asleep in the driver's seat with the car in reverse and her foot on the brake. In the dashboard camera video, Officer Brenka can be heard asking defendant, "Ma'am, what are you doing? You're passed out in the middle of the street." Finally, while defendant argues that the State failed to establish that defendant was stopped in a "business or residence district," the dashboard camera video clearly shows that the intersection of West 28th Street and Ridgeland Avenue contained only business and residential buildings.

¶ 43                                    B. Fines

¶ 44    Defendant argues that the circuit court abused its discretion by waiving her fines by 50% instead of 100% after finding that the fines constituted "undue hardship." The circuit court imposed fines totaling $2,100: $1,381 for defendant's driving while under the influence of alcohol conviction (705 ILCS 135/15-30 (West 2022)), $150 for a "DUI analysis" (705 ILCS 135/15-70(5) (West 2022)), $500 for having a blood alcohol concentration of 0.016 or greater (625 ILCS 5/11-501(c)(4)), and a $75 minimum fine for a conviction for any offense other than a minor traffic offense (705 ILCS 135/5-5 (West 2022)). The circuit court can waive up to 50% of the $1,381 fine for a driving while under the influence of alcohol conviction (725 ILCS 5/124A-20(b-5) (West 2022)) and its decision to do so is reviewed for abuse of discretion. *Cf. People v. Rivera*, 2020 IL App (2d) 171002, ¶ 7.

¶ 45    After defendant submitted a fee waiver application and testified that she receives state

assistance in the form of food stamps and a Link card, the circuit court stated that it would "grant 50 percent waiver due to undue hardship" and reduced defendant's fines to $1,050. Defendant argues that this was an abuse of discretion and that the circuit court should have granted a 100% waiver of defendant's fines. However, under the Code of Criminal Procedure, the circuit court could only waive up to 50% of defendant's $1,381 fine for her driving while under the influence conviction. 725 ILCS 5/124A-20(b-5)(1). It had no authority to grant a 100% waiver, and therefore its failure to do so cannot be an abuse of discretion.

———————

¶ 46 As the parties concede, the sentencing order incorrectly states that defendant was found guilty under section 11-501(a)(1) of the Illinois Vehicle Code rather than section 11-501(a)(2). We therefore remand to the circuit court for the limited purpose of correcting the sentencing order. Ill. S. Ct. R. 472 (eff. Feb. 1, 2024) ("In criminal cases, the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including *** [c]lerical errors in the written sentencing order *** resulting in a discrepancy between the record and the actual judgment of the court".); see, *e.g.*, *In re A.W.*, 2024 IL App (1st) 221700-U, ¶ 30 (remanding to lower court for the limited purpose of correcting scrivener's error in adjudication order).

¶ 47                              III. CONCLUSION

¶ 48 Defendant's convictions for driving while under the influence of alcohol, improper lane usage, transporting alcohol, driving without a valid driver's license, and stopping, standing or parking outside of a business or residence district are affirmed; defendant's conviction for leaving

the scene of an accident is reversed; and the cause is remanded for the limited purpose of correcting a scrivener's error.

¶ 49    Affirmed in part and reversed in part.

¶ 50    Cause remanded.